IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


RUBEN D. WELCH,

                    Plaintiff,

vs.                                    Case No. 09-1411-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental

impairment or impairments must be of such severity that they are

not only unable to perform their previous work but cannot,

considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On October 24, 2008, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 11-19). Plaintiff alleges that he has been disabled since November 1, 2006 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 13). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 13). At step two, the ALJ found that plaintiff had the following severe

impairments: diabetes, obesity, chronic venous insufficiency and thrombocytopenia (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 14-15), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 17). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 18-19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his step five findings?**

The ALJ made the following RFC findings for the plaintiff:

> After careful consideration of the entire record, the undersigned finds that the <u>claimant has the residual functional capacity to perform a range of light work</u> as defined in 20 CFR 404.1567(b), which demands lifting up to 20 pounds occasionally and lifting/carrying up to 10 pounds frequently; standing or walking 2 hours in an 8 hour workday and sitting 6 hours in an 8 hour workday with alternating sitting and standing every 60 minutes for a period of 5-10 minutes. The claimant could not perform work requiring climbing on ropes, ladders or scaffolds or kneeling and no more than occasional climbing, balancing, stooping, crouching or crawling, and should avoid concentrated exposure to extreme cold, wetness and work hazards (machinery, heights, etc.).

(R. at 14-15, emphasis added). At step five, the ALJ indicated that plaintiff was born on April 6, 1959 and was 46 years old,

which is defined as a younger individual age 18-49, on the alleged disability onset date (R. at 18). The ALJ found that plaintiff had a high school education. The ALJ then used the Medical-Vocational Rules as a framework to determine whether plaintiff was disabled. The ALJ stated that if the plaintiff had the RFC to perform a full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.[1] However, because plaintiff had additional limitations which prevented him from performing all or substantially all of the requirements of light work, the ALJ utilized a vocational expert, who testified that plaintiff could perform four sedentary jobs (R. at 18). Based on this testimony, the ALJ concluded that plaintiff was not disabled (R. at 19).

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2.

---

[1]This grid applies for a person who is a younger individual, high school graduate or less, and previous work experience of "skilled or semiskilled-skills not transferable." 20 C.F.R. Pt. 404, Subpt. P, App. 2 Table No. 2 (2010 at 596). The ALJ, although utilizing this grid, made no finding on transferability of job skills because it was not material to the determination of disability because the grids support a finding that plaintiff, if limited to light work, is not disabled whether or not plaintiff has transferable job skills (R. at 18).

<u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988).  The grids

contain tables of rules which direct a determination of disabled

or not disabled on the basis of a claimant's RFC category, age,

education, and work experience.  <u>Thompson</u>, 987 F.2d at 1487.

First, plaintiff argues that the ALJ erred by indicating

that plaintiff could perform a range of light work.  Plaintiff

argues that the evidence establishes that he is limited to

sedentary work.

At the hearing, the vocational expert (VE), after being

given the RFC findings by the ALJ, identified four sedentary jobs

that plaintiff could perform (R. at 58-60).  The VE, after

identifying three sedentary jobs, testified as follows:

> Q (by ALJ): I take it those three are
> representative of such work that a person
> could perform?  Or are they exclusive?
>
> A (by VE): <u>They're, they're not exclusive,</u>
> <u>but they're pretty close to that</u>.
>
> Q: Okay.
>
> A: The, the others at a sedentary level, you,
> you'd have more difficulty in changing the
> positions on that on a regular basis.

(R. at 59-60, emphasis added).  The ALJ then asked the VE if he

could identify any further jobs that plaintiff could perform

given the RFC limitations, and the VE then identified a fourth

sedentary job.  At no time did the VE identify any light work

that plaintiff could perform.

In the case of <u>Distasio v. Shalala</u>, 47 F.3d 348 (9th Cir.

7

1995), the ALJ found that the claimant was limited to light work, but with limitations.  The claimant was closely approaching advanced age, had a high school education, and no transferable skills.  The VE testified that the claimant could only perform what she believed were sedentary jobs.  On these facts, Rule 201.14 would result in a finding that the claimant was disabled. Id., 47 F.3d at 349.  The court held as follows:

> The testimony of the vocational expert belied the ALJ's finding that the combination of Distasio's exertional and non-exertional limitations did not limit him to sedentary work. The vocational expert's testimony established that, at best, Distasio could perform jobs that fall within the sedentary category. The Secretary has thus produced no evidence that Distasio is capable of any job other than sedentary work...
>
> Because the Secretary failed to produce evidence that any job categorized as light work was available to Distasio, but only produced evidence of sedentary work available to him, the use of grid rule 202.14 [applicable to light work] as a framework for decisionmaking was not based on substantial evidence...
>
> The Secretary failed to account for the discrepancy between a finding that Distasio could perform light work and was therefore not disabled, with the vocational expert's testimony establishing that, at best, Distasio could perform jobs that fell within the sedentary category.  Accordingly, we reverse and remand for an award of benefits.

Id., 47 F.3rd at 350.

In Paschall v. Chater, 1996 WL 477575 (10th Cir. Aug. 23, 1996), the ALJ determined that the claimant retained the RFC to

perform light work.  Plaintiff was a person closely approaching

advanced age, with a high school education and no transferable

skills.  Given claimant's age, education and work experience, the

grids would direct a finding of disabled if plaintiff were

limited to sedentary work (201.14), but not if he could perform

light work.  The ALJ elicited testimony from a VE, but only asked

the VE if there were sedentary jobs that plaintiff could perform.

The ALJ did not inquire about light jobs.  Thus, the VE only

identified sedentary work that plaintiff could perform.  The

court, citing to <u>Distasio</u>, held that the VE's testimony about

available sedentary jobs does not support a finding that

plaintiff is not disabled.  <u>Paschall</u>, 1996 WL 477575 at *1-2.

The court further stated:

> Absent evidence of the existence of a
> significant number of light jobs that
> plaintiff can perform despite his
> impairments, substantial evidence does not
> support the ALJ's determination at step five
> that plaintiff is not disabled.

<u>Id</u>., 1996 WL 477575 at *2.

In <u>LaClair v. Massanari</u>, Case No. 00-1187-JTM (D. Kan. May

11, 2001), the ALJ found that plaintiff had an RFC for light work

with additional limitations.  The VE indicated that the

additional limitations would result in a 70-90% reduction of the

light work base, and could only identify one sedentary position

that plaintiff could perform.  Because defendant failed to

identify any jobs at the light work level that plaintiff could

9

perform, the court held that the ALJ erred by using a grid for light work when the applicable grid for sedentary work for a person of claimant's age, education and previous work experience would direct a finding that the claimant was disabled. Id., Doc. 15 at 5-10).

The facts of the case before the court are nearly identical to those of Distasio, Paschall and LaClair regarding the lack of evidence that plaintiff can perform light work. In fact, the VE testified that the sedentary jobs he identified as those plaintiff could perform given the RFC findings of the ALJ were pretty close to being exclusive. The VE identified four sedentary jobs that plaintiff could perform, but no light work. Absent evidence of the existence of a significant number of light jobs that plaintiff can perform despite his impairments, substantial evidence does not support the ALJ's determination at step five that plaintiff is not disabled.

Second, plaintiff further argues that the ALJ erred at step five by failing to consider the fact that plaintiff falls into a borderline situation. The Commissioner has established three age categories: younger person (under age 50), person closely approaching advance age (50-54), and person of advanced age (55 and over). 20 C.F.R. § 404.1563 (c,d,e). Furthermore, in some circumstances, the regulations consider persons age 45-49 to be more limited than persons who have not attained age 45. 20

C.F.R. § 404.1563(c).  20 C.F.R. Pt. 404, Subpt. P, App. 2

contains the following language regarding persons approaching

advanced age:

> (g) Individuals approaching advanced age (age
> 50-54) may be significantly limited in
> vocational adaptability if they are
> restricted to sedentary work. When such
> individuals have no past work experience or
> can no longer perform vocationally relevant
> past work and have no transferable skills, a
> finding of disabled ordinarily obtains.
> However, recently completed education which
> provides for direct entry into sedentary work
> will preclude such a finding. For this age
> group, even a high school education or more
> (ordinarily completed in the remote past)
> would have little impact for effecting a
> vocational adjustment unless relevant work
> experience reflects use of such education.

(2010 at 593).

The regulations also contain the following language:

> We will not apply the age categories
> mechanically in a borderline situation. If
> you are within a few days to a few months of
> reaching an older age category, and using the
> older age category would result in a
> determination or decision that you are
> disabled, we will consider whether to use the
> older age category after evaluating the
> overall impact of all the factors of your
> case.

20 C.F.R. § 404.1563(b) (2010 at 389-390).

Plaintiff was born on April 6, 1959 (R. at 18).  The ALJ

decision is dated October 24, 2008 (R. at 19).  Therefore,

plaintiff was 49 years, 6 ½ months old at the time of the

decision, and was therefore 5 ½ months short of his 50th birthday

on the date of the ALJ decision.

The ALJ found that plaintiff was 46 years old on the date that plaintiff originally alleged he became disabled, October 7, 2005 (R. at 18, 11); plaintiff would have been 47 years old on the amended date of disability, November 1, 2006 (R. at 11). However, the ALJ did not consider plaintiff's age on the date of his decision. Plaintiff was 5 ½ months short of his 50th birthday on the date of the ALJ decision, and thus within 5 ½ months of fitting the age category for a person closely approaching advanced age (50-54). Plaintiff argues that the ALJ was required to decide whether plaintiff, because of his age at the time of the ALJ's decision, falls within a borderline situation and should be considered for the next age category of closely approaching advanced age. The ALJ did not address this issue in his decision. Under the Medical-Vocational Guidelines, a person limited to sedentary work, who is closely approaching advanced age, with a high school education who is "skilled or unskilled-skills not transferable" would be deemed disabled (201.14).

In the case of <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1134 n.5 (10th Cir. 1998), the court held as follows in an opinion written by Senior District Judge Brown:

> The ALJ never addressed the issue of whether
> Mr. Daniels fell within the borderline or
> whether he should be considered in the next
> age bracket. Determining whether a claimant

12

> falls within a borderline situation appears
> to be a factual rather than discretionary
> matter, and the ALJ erred by not making the
> necessary factual finding. [citation omitted]
> Even were this considered a discretionary
> matter, the ALJ would have abused that
> discretion by failing to exercise it.
> [citation omitted]

In the case of <u>Cox v. Apfel</u>, 166 F.3d 346 (table), 1998 WL

864118 at *4 (10th Cir. Dec. 14, 1998), plaintiff was within 6

months of the next age category.  The court held:

> <u>Finally, because plaintiff was within six
> months of the next age category, that is,
> advanced age, at the time the ALJ issued his
> decision, he erred by not addressing whether
> plaintiff was of borderline age before
> choosing a rule from the grids</u>. See 20 C.F.R.
> §§ 404.1563(a), 416.963(a) (both stating:
> "[W]e will not apply these age categories [in
> the grids] mechanically in a borderline
> situation.")

(emphasis added).

In the case of <u>Damian v. Astrue</u>, Case No. 06-1132-JTM (D.

Kan. March 26, 2007), plaintiff was 5 months and 5 days short of

his 45th birthday, at the time of the ALJ's decision.  Relying on

<u>Daniels</u> and <u>Cox</u>, the court held that the ALJ erred by not making

the necessary factual finding of whether plaintiff falls within a

borderline situation because he was just over 5 months short of

his 45th birthday at the time of the ALJ decision.  <u>Damian</u>, Doc.

15 at 6-8.

In the case of <u>Strauser v. Astrue</u>, Case No. 08-1395-JTM (D.

Kan. Feb. 2, 2010), plaintiff was 5 months short of his 50th

birthday at the time of his decision.  Relying on the cases cited above, the court held that the ALJ erred by not making the necessary factual finding of whether plaintiff falls within a borderline situation because he was 5 months short of his 50th birthday at the time of the ALJ decision.  <u>Strauser</u>, Doc. 14 at 14-17.

The above cases clearly establish that when the claimant is within six months of the next age category, it is error for the ALJ not to address whether the claimant is of borderline age before utilizing the grids.  The ALJ in the case before the court clearly erred because the date of the ALJ decision is less than six months from plaintiff's 50th birthday, when he will be in the next age category of closely approaching advanced age.  As noted earlier, under the Medical-Vocational Guidelines, a person limited to sedentary work, who is closely approaching advanced age, with a high school education who is "skilled or unskilled-skills not transferable" would be deemed disabled (201.14). This error requires remand for further findings on this issue.

For these reasons, the court finds that substantial evidence does not support the ALJ's finding that plaintiff can perform other work in the national economy.  This case shall therefore be remanded for further proceedings.  Absent substantial evidence that plaintiff can perform a significant number of light jobs, the ALJ must find that plaintiff is limited to sedentary work.

The ALJ must then make a finding regarding the transferability of plaintiff's work skills. The ALJ must also make a factual determination of whether plaintiff falls within a borderline situation, and, if so, whether he should be considered in the next age bracket. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence. <u>Daniels</u>, 154 F.3d at 1136.

**IV. Are the ALJ's RFC findings supported by substantial evidence?**

In light of the fact that the evidence does not support a finding that plaintiff can perform a range of light work, the ALJ shall make new RFC findings when the case is remanded. The ALJ, citing to the regulation defining "light work," found that plaintiff could perform a range of light work which "demands" standing or walking 2 hours in an 8 hour workday (R. at 14-15). However, the regulation states that light work requires a good deal of walking or standing, or involves sitting most of the time with some pushing or pulling of leg controls. The regulation further states that to be considered capable of performing a wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).[2]

The RFC findings shall be made in accordance with SSR 96-8p.

---

[2]The court would note that the ALJ's RFC findings regarding plaintiff's ability to lift and carry do match the definition of light work.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his

conclusions.  <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49

F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to

comply with SSR 96-8p because he has not linked his RFC

determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the

ALJ's RFC determination.  Such bare conclusions are beyond

meaningful judicial review.  <u>Brown v. Commissioner of the Social

Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan.

2003).

As noted above, the RFC assessment must always consider and

address medical source opinions.  If the RFC assessment conflicts

with an opinion from a medical source, the ALJ must explain why

the opinion was not adopted.  In his decision, the ALJ gave

little weight to the opinions of Dr. Johnson, Dr. Brooks, and Dr.

Winkler; however, it is not clear from the ALJ's decision what

medical source evidence, if any, the ALJ relied on in making his

RFC findings.  Although the ALJ did not mention the state agency

assessments by Dr. Lee and Dr. Cowles (R. at 286-287, 322), it

appears that the ALJ's RFC findings match many of their opinions

(stand/walk at least 2 hours, alternate sitting and standing

every 60 minutes for 5-10 minutes, no climbing of ropes, ladders,

or scaffolds, and only occasional climbing of ramp/stairs,

balancing, stooping, kneeling, crouching and crawling).  The

court would also note that the ALJ's RFC findings, which included

17

environmental restrictions to avoid concentrated exposure to extreme cold, wetness and hazards, precisely match the environmental limitations in a state agency physical RFC assessment which was never mentioned by the ALJ in his decision (R. at 292). On remand, the ALJ must keep in mind that if he intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

In making his RFC findings, the ALJ gave various reasons for discounting the opinions of the treatment providers, Dr. Johnson and Dr. Brooks. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

The ALJ did provide some valid reasons for discounting the opinions of Dr. Johnson or Dr. Brooks. For example, Dr. Johnson opined on April 4, 2008 that plaintiff is unable to work because he weighs over 350 pounds and is having a difficult time losing that weight (R. at 335). However, the ALJ correctly noted that plaintiff testified on September 22, 2008 that he had lost 90 pounds in 5 months and now weighed 260 pounds (R. at 17, 36).

On the other hand, the ALJ discounted the opinion of Dr. Brooks limiting plaintiff to standing for 2 hours because plaintiff had testified that he could stand for 3 hours (R. at 17). However, the ALJ's own RFC findings limit plaintiff to standing or walking for 2 hours with a further requirement that he be able to alternate sitting and standing every 60 minutes for a period of 5-10 minutes, which matches the opinion of two non-examining medical sources, Dr. Lee and Dr. Cowles (R. at 15, 286, 322). It makes no sense to discount this opinion by Dr. Brooks when that very limitation was included in the ALJ's RFC findings and were consistent with other medical source opinions.

The ALJ also found that other opinions of Dr. Brooks were not supported by the evidence (R. at 17). On remand, the ALJ should consider SSR 96-5p, which states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the

> case record, the adjudicator must make "every
> reasonable effort" to recontact the source
> for clarification of the reasons for the
> opinion.

1996 WL 374183 at *6.

Plaintiff also argues that the ALJ should have considered and addressed statements from plaintiff's mother and an employee of the agency. In <u>Blea v. Barnhart</u>, 466 F.3d 903 (10th Cir. 2006), the ALJ failed to discuss or consider the lay testimony of the claimant's wife; the ALJ's decision failed to mention any of the particulars of the testimony of claimant's wife, and in fact, never even mentioned the fact that she did testify regarding the nature and severity of her husband's impairments. The court held as follows:

> In actuality, the ALJ is not required to make
> specific written findings of credibility only
> if "the written decision reflects that the
> ALJ considered the testimony." <u>Adams</u>, 93 F.3d
> at 715. "[I]n addition to discussing the
> evidence supporting his decision, the ALJ
> also must discuss the uncontroverted evidence
> he chooses not to rely upon, as well as
> significantly probative evidence he rejects."
> <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th
> Cir.1996).

> Here, the ALJ made no mention of Mrs. Blea's
> testimony, nor did he refer to the substance
> of her testimony anywhere in the written
> decision. Thus, it is not at all "clear that
> the ALJ considered [Mrs. Blea's] testimony in
> making his decision." <u>Adams</u>, 93 F.3d at 715.
> Additionally, Mrs. Blea's testimony regarding
> her husband's suicidal thoughts is not only
> uncontroverted; it serves to corroborate Dr.
> Padilla's psychiatric examination of Mr.
> Blea, where he stated that Mr. Blea has been

> dysthymic for years. [citation to record
> omitted] Thus, the ALJ's refusal to discuss
> why he rejected her testimony violates our
> court's precedent, and requires remand for
> the ALJ to incorporate Mrs. Blea's testimony
> into his decision. "Without the benefit of
> the ALJ's findings supported by the weighing
> of this relevant evidence, we cannot
> determine whether his conclusion[s] ... [are]
> supported by substantial evidence." <u>Threet</u>,
> 353 F.3d at 1190; <u>see also</u> <u>Baker v. Bowen</u>,
> 886 F.2d 289, 291 (10th Cir.1989) ("[W]here
> the record on appeal is unclear as to whether
> the ALJ applied the appropriate standard by
> considering all the evidence before him, the
> proper remedy is reversal and remand.").

<u>Blea</u>, 466 F.3d at 915. According to <u>Blea</u>, the ALJ, at a minimum, should indicate in his decision that he has considered the 3rd party testimony.

Furthermore, according to SSR 96-7p, when evaluating the credibility of an individual's statements, the ALJ "must also consider any observations recorded by SSA personnel who previously interviewed the individual."  SSR 96-7p, 1996 WL 374186 at *8.  Therefore, on remand, the ALJ shall consider the 3rd party statements in accordance with <u>Blea</u> and SSR 96-7p.

Finally, plaintiff alleges error by the ALJ in finding that plaintiff's osteoarthritis of the knees and lumbar spine were not severe impairments.  The ALJ correctly noted that an impairment must be established by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508; SSR 96-4p, 1996 WL 374187 at *1.  On remand, plaintiff should provide or point out to the ALJ the medically acceptable clinical and

laboratory diagnostic techniques which would establish the existence of these impairments.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 15th day of December, 2010, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge